UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LOIS C. NANTZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 09-248-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

***   ***   ***   ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Lois C. Nantz and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") [Record Nos. 10, 11]. Nantz argues that substantial evidence does not support the decision of the administrative law judge (ALJ) that she is not disabled. She seeks remand for an award of benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Nantz.

**I.**

On April 24, 2006, Nantz filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act and Supplemental Security

Income (SSI) under Title XVI of the Act.  She alleged disability beginning September 1, 2005.[1] [Tr., p. 107, 112]  These applications were denied initially and upon reconsideration. [Tr., p. 15]  Nantz, along with her attorney Phillip Lewis and vocational expert (VE) Linda Taber, appeared before ALJ Don Paris via video on July 30, 2008, in Hazard, Kentucky. [Tr., p. 434]  In a hearing decision dated February 11, 2009, ALJ Paris found that Nantz was not disabled under sections 216(i) and 223(d) of the Social Security Act and, therefore, was not entitled to a period of disability or disability insurance benefits.  [Tr., p. 27]  The ALJ further found that Nantz was not entitled to SSI because she was not disabled under section 1614(a)(3)(A) of the Act.  [Tr., p. 28]

Nantz was thirty-eight years old at the time of the administrative hearing.  She has a high school education.  [Tr., p. 439] Nantz has experience working as an office clerk, as a data entry clerk,  and in a grocery store.  [Tr., p. 439-42]  Her alleged disability stems from back, knee, and hip pain; glaucoma; arthritis; stomach problems; bipolar disorder; post-traumatic stress disorder (PTSD); anxiety; and depression.  [Tr., p. 155]  After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Nantz suffered from the severe impairments of degenerative disc disease of the lumbar spine with chronic back pain; degenerative disc disease of the cervical spine; bipolar disorder; PTSD; and a

---

1       As the Commissioner notes, there is some confusion in the record regarding the alleged onset date. [*See* Record No. 11, p. 2 (citing Tr., p. 78, 107, 112).]  However, the ALJ used an alleged onset date of September 1, 2005, and Nantz does not challenge that date.  Accordingly, the Court will not consider whether Nantz might have been disabled prior to September 1, 2005.  [*See* Tr., p. 15]

personality disorder, not otherwise specified. [Tr., p. 18] Notwithstanding these impairments, the ALJ found that Nantz retained the residual functional capacity (RFC)

> to perform light work . . . . The claimant can lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. The claimant can no more than frequently push/pull with the lower extremities. She can only occasionally climb stairs/ramps and can never climb ladders/ropes/scaffolds. The claimant is limited to only occasional stooping, kneeling, crouching, or crawling and no more than frequent reaching in all directions including overhead. She should avoid concentrated exposure to full body vibration and avoid hazards such as dangerous machinery. She also suffers from mental impairments but has the mental capacity to understand, remember, and carry out simple and detailed work instructions; complete routine mental aspects, making associated work-related decisions without special supervision, following a regular schedule; tolerate co-workers and accept supervision in an object[-]focused context with infrequent and casual contacts; and adapt to gradual changes and pressures of a routine work environment.

[Tr., p. 21] As a result of this assessment, Nantz was denied a period of disability, disability insurance benefits, and SSI. [Tr., p. 27-28]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four

steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work.  If she can, she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Howard v. Comm'r*

*of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Nantz argues that the ALJ did not give sufficient weight to the opinion of an examining source, Dr. Robert Spangler, and gave improper weight to the opinions of two

-5-

non-examining sources, Dr. Ed Ross and Dr. Rebecca Joslin.  She further maintains that the hypothetical posed to the vocational expert was flawed because it did not incorporate all the restrictions set out in Dr. Spangler's report.  Each of Nantz's arguments is addressed below.

### A.    Opinions of Examining and Non-Examining Sources

Nantz contends that ALJ Paris gave insufficient weight to the opinion of Dr. Spangler, a psychologist who performed a consultative examination of Nantz on October 7, 2006.[2] [Record No. 10, p. 4-5]  She argues that the ALJ improperly ignored Dr. Spangler's findings that she probably would not be able to maintain regular attendance if she were employed and could not handle her own financial affairs if she were awarded benefits.  [Record No. 10, p. 4]  She also asserts that the ALJ relied too heavily upon the opinions of Dr. Ross and Dr. Joslin, who did not examine her.  [*Id.*]

Generally, the opinion of a source who has examined the claimant is entitled to greater weight than the opinion of a non-examining source.    20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  In deciding how much weight to give an opinion, however, the ALJ must consider a number of other factors, including how consistent the opinion is with the record as a whole.  20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).  The ALJ must explain the weight he gives to an opinion.  20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).

---

2       At several points in her brief, Nantz refers to Dr. Spangler as a treating source, which he clearly is not.  [*See* Record No. 10, p. 5]  Like ALJ Paris, the Court will give Nantz the benefit of the doubt and will assume this was an innocent mistake.  [*See* Tr., p. 17-18, 25-26]  In any event, Dr. Spangler is a non-treating source whose opinion is not entitled to the special deference that treating-source opinions generally receive. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Nantz's assertion that the ALJ "did not give adequate consideration to the opinion of the examining physician [sic], Dr. Spangler" and "erroneously based his decision on the opinion of non-examining sources" is without merit.[3]  [*See* Record No. 10, p. 5]  ALJ Paris gave "significant weight" to Dr. Spangler's opinion, noting that "Dr. Spangler performed a thorough, well-reasoned evaluation and corroborated his findings with testing."  [Tr., p. 25]  In his decision, the ALJ discussed Dr. Spangler's assessment extensively, noting several of his findings that were consistent with the other medical evidence and Nantz's testimony at the hearing.  [Tr., p. 18-20, 25]  Moreover, Dr. Spangler's diagnoses of bipolar disorder and PTSD were included in the ALJ's finding as to Nantz's severe impairments.  [Tr., p. 18]

ALJ Paris likewise granted significant weight to the opinions of Dr. Ross and Dr. Joslin, the non-examining psychologists.  [Tr., p. 25]  He observed that their assessments were consistent with the medical evidence of record.  [*Id.*]  Throughout his discussion of the medical evidence, ALJ Paris noted that Dr. Spangler's evaluation was corroborated on many points by the Ross and Joslin assessments.  [Tr., p. 19-20]  Furthermore, he noted (citing specific examples) that these three opinions were for the most part consistent with Nantz's testimony and his own observations of Nantz at the July 2008 hearing.  [*Id.*]  Thus, the Court finds that the ALJ sufficiently explained the weight he gave to the opinions of Dr. Spangler, Dr. Ross, and Dr. Joslin.

---

3       Nantz also describes Dr. Spangler as an examining *physician*, which is inaccurate.

The Court likewise detects no error in the respective weight given to these opinions and finds Nantz's citation of *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), for the proposition that "[a]n [ALJ] may rely upon the opinion of non-examiners over that of an examining source[] only when the non-examiner has reviewed the entire record and clearly stated reasons why he disagrees with the examining source," somewhat puzzling. [Record No. 10, p. 5] In *Barker*, the Sixth Circuit rejected the claimant's argument that the ALJ had ignored an examining source's opinion regarding the claimant's mental impairments and "fully accepted" the opinion of a non-examining source that those impairments were less severe. *See* 40 F.3d at 794. The court was "not persuaded" by Barker's contention that "[w]ithout a valid, explicitly stated rationale for rejecting the findings of" the examining source, "the ALJ's conclusion that the plaintiff's mental limitations did not preclude him from gainful activity [was] not supported by substantial evidence." *Id.*

In this case, as in *Barker*, it is clear from the ALJ's decision that the examining source's findings "were neither ignored nor rejected," and those findings were "specifically discussed" by the ALJ. *Id.* While the ALJ's decision did not mention Dr. Spangler's opinions that Nantz might have difficulty with work attendance and could not manage her financial affairs, the omission is insignificant, as these particular findings were inconsistent with the other evidence in the record. First, Dr. Spangler's opinion, given without explanation, regarding Nantz's ability to manage her financial affairs is not only unsupported by other evidence but also directly contradicted by Nantz's own statement in May 2006 that she is able to pay bills, handle a savings account, count change, and use a checkbook or

money orders.  [Tr., p. 123]  Nantz's argument on this point thus can be dismissed summarily.

Dr. Spangler's conclusory finding that Nantz's "attendance in the workplace probably will not be adequate" is likewise inconsistent with the evidence of record.  [Tr., p. 198]  Dr. Ross found that Nantz's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" was only moderately limited. Furthermore, he found that Nantz was not significantly limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  [Tr., p. 200-01]  Dr. Joslin concluded that Nantz was not significantly limited in her ability to work without interruption from her mental impairments and only moderately limited in following a schedule, attendance, and punctuality.  [Tr., p. 230-31]

Dr. Spangler's opinion on this point is further contradicted by the fact that Nantz held a job for several months *after* her alleged onset date.  [*See* Tr., p. 112]  Nantz testified at the hearing that she stopped working in April 2006 — seven months after she asserts she became disabled — because she "was getting up every morning an hour before [she] had to be in[]to work and spending most of [her] day throwing up at work because of what little [she] did have to deal with people."  [Tr., p. 460]  She also claimed that she had "missed a whole lot of days before" she left that job.  [*Id.*]  However, the ALJ found that Nantz's subjective complaints regarding her mental limitations were not entirely credible.  He noted that "[a]lthough the claimant is alleging an inability to perform work-related activities secondary

-9-

to her mental impairments, the medical evidence of record is devoid of consistent and continual treatment by a mental health professional." [Tr., p. 24] ALJ Paris further observed that "the medical evidence of record is devoid of mental health treatment . . . for exacerbation of her mental health symptoms since September 1, 2005, the alleged onset date." [*Id.*] He noted that Nantz's testimony was consistent with the absence of evidence in the record as to recent treatment for her mental health symptoms: "At the hearing, the claimant further testified that she was last treated by a mental health professional in 2003." [*Id.*] The ALJ concluded that the evidence regarding treatment (or lack thereof) suggested that Nantz's mental impairments were "not as severe as alleged." [*Id.*]

The ALJ's credibility determination is entitled to "great weight and deference" provided it is "reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. That standard is more than met here. In addition to the absence of mental health treatment cited by ALJ Paris, the Court notes that Nantz's statements regarding the circumstances surrounding her departure from her last job have been inconsistent at best. In May 2006, she responded "yes" when asked "Have you ever been fired or laid off from a job because of problems getting along with other people?," explaining that she "[c]an't deal with coworkers or customers at all" and naming the company for which she worked until April 2006 as the employer who let her go for that reason. [*See* Tr., p. 126] However, more recently, Nantz answered "no" to the question "Were you asked to quit [your last job]?" and

stated that she left that job because she "beca[me] physically unable to work."[4]  [Tr., p. 154]

Finally, on another occasion, Nantz reported that although she had worked since her alleged

onset date and stopped working "[b]ecause of [her] health problems," her impairments did

*not* cause her to "work fewer hours," "change [her] job duties," or "make any job-related

changes such as . . . attendance" during that period.[5]   [Tr., p. 112]   Given these

inconsistencies, as well as Nantz's failure to seek treatment and the absence of other evidence

supporting a finding that her mental impairments would prevent her from working, the ALJ's

credibility determination with respect to those impairments was entirely reasonable and

supported by substantial evidence.  *See Jones*, 336 F.3d at 476.

In sum, the ALJ's failure to mention two findings by Dr. Spangler that were

inconsistent with the other evidence of record was harmless error, if it was error at all.  The

Sixth Circuit has found that

> [w]hile it might be ideal for an ALJ to articulate his reasons for crediting or
> discrediting each medical opinion, it is well settled that[] "an ALJ can consider
> all the evidence without directly addressing in his written decision every piece
> of evidence submitted by a party.  Nor must an ALJ make explicit credibility
> findings as to each bit of conflicting testimony, so long as his factual findings
> as a whole show that he implicitly resolved such conflicts."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (applying

harmless-error standard where "the ALJ merely failed to explain why he favored several

---

4        Nantz does not challenge the ALJ's finding with respect to her physical impairments.  [*See* Record No. 10]

5        As noted previously, Nantz claimed at the hearing that she had "missed a whole lot of days before" she stopped working in April 2006.  [Tr., p. 460]

examining physicians' opinions over another's"). Thus, the ALJ was not required to explain why he disregarded those two parts of Dr. Spangler's opinion, since there was ample evidence in the record contradicting them. ALJ Paris conducted a thorough analysis of the medical evidence and Nantz's testimony at the July 2008 hearing. He discussed both at length in his decision and sufficiently explained the weight he gave to the opinions of Dr. Spangler, Dr. Ross, and Dr. Joslin. He was not bound by conclusory findings of an examining source unsupported by other evidence in the record. *See Kornecky*, 167 F. App'x at 509.

**B.     Hypothetical Posed to Vocational Expert**

Nantz maintains that because the ALJ failed to consider Dr. Spangler's opinion regarding her abilities to maintain regular work attendance and handle her financial affairs, the hypothetical posed to the vocational expert did not accurately reflect her mental limitations. [Record No. 10, p. 4] At the hearing, ALJ Paris posed the following hypothetical to the VE:

> The Claimant has the residual functional capacity for light exertional work, [can] occasionally lift and carry 20 pounds, frequently 10 pounds, stand or walk a total of six hours in an eight-hour day, sit six hours in an eight-hour day, no more than frequent push/pull with her lower extremities, only occasional climbing of stairs or ramps, never ladder or rope, only occasional stooping, kneeling, crouching or crawling, no more than frequent reaching in all directions including overhead. She should avoid concentrated exposure to full body vibration and she should avoid hazards such as dangerous machinery and unprotected heights. She also suffers from some mental impairments[;] however, she has the mental capacity to understand, remember and carry out simple and detailed work instructions, complete the routine mental aspects, making associated work-related decisions without special supervision[,] following a regular schedule, is able to tolerate coworkers and accept

-12-

supervision in a[] focused work environment in which there would be infrequent or casual contact, is able to adapt to gradual changes and pressures of a routine work environment.[6]

[Tr., p. 462-63]  In response to this hypothetical, the VE stated that she believed Nantz could perform her past work as a data entry clerk.  [Tr., p. 463]  At the ALJ's request, the VE also identified several other jobs available in the national economy that Nantz could perform, based on the limitations set out in the hypothetical and Nantz's age, education, and past relevant work.  [Tr., p. 464]

Testimony by a VE in response to a hypothetical may serve as substantial evidence in support of an ALJ's determination that there is work the claimant can perform, provided the hypothetical "accurately portrays [the claimant's] individual physical and mental impairments."  *Howard*, 276 F.3d at 238 (internal quotation omitted).  An ALJ must first "evaluat[e] the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'"  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)) (second alteration in original).  Then, "[t]he vocational expert testifies on the basis of [the] claimant's 'residual functional capacity and . . . age, education, and work experience'" to determine whether the claimant can do her past relevant work or "'can make an adjustment to other work.'"  *Id.* (quoting 20 C.F.R. § 416.920(a)(4)(v)); 20 C.F.R. §§ 404.1560(b), 416.960(b).

---

6    This hypothetical was substantially identical to the RFC ultimately assigned to Nantz in the ALJ's decision.  [*See* Tr., p. 21]

Nantz argues that the ALJ erred in concluding that she could perform her past work as a data entry clerk because this conclusion was based on the VE's response to a hypothetical that did not incorporate Dr. Spangler's opinions as to work attendance and management of financial affairs. [Record No. 10, p. 4] As explained above, the ALJ did not err in leaving those restrictions out of the RFC he assigned to Nantz. Therefore, the VE's testimony in response to a hypothetical based on that RFC is substantial evidence supporting the ALJ's finding that Nantz can do her past relevant work and thus is not disabled.

Moreover, as he had done at earlier points in the analysis, ALJ Paris once again gave Nantz "the benefit of the doubt" and continued to the next step after finding that she could perform her relevant past work. [Tr., p. 26; *see also* Tr., p. 17-18 (giving Nantz "benefit of the doubt" and continuing analysis despite finding at first step that she had engaged in substantial gainful activity since alleged onset date); Tr., p. 25 ("I have given the claimant the benefit of the doubt and based on her subjective complaints find she is more limited than Dr. Knox-Carter opined.")] As indicated above, ALJ Paris asked the VE an additional hypothetical during the hearing to determine whether there were jobs existing in significant numbers in the national economy that Nantz could adjust to and perform. [Tr., p. 464] Based on the VE's response to this further hypothetical, ALJ Paris found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr., p. 26] Thus, even if the ALJ's finding that Nantz could return to her past work had somehow been in error, she would nevertheless have been found not disabled at the next step

-14-

of the analysis.  At either step, there is substantial evidence to support a finding of no disability.

## IV.

Although Nantz has established that she suffers from some medical impairments, she has not established that her symptoms are severe enough to warrant Supplemental Security Income, a period of disability, or disability insurance benefits.  The ALJ did not give insufficient weight to the opinion of Dr. Spangler or improper weight to the opinions of Dr. Ross and Dr. Joslin.  Moreover, the hypothetical posed to the vocational expert accurately reflected Nantz's physical and mental limitations based on the evidence in the record. Viewing the record as a whole, substantial evidence supports ALJ Paris' determination that Nantz is not disabled.  Accordingly, it is hereby

**ORDERED** as follows:

(1)     Plaintiff Lois C. Nantz's Motion for Summary Judgment [Record No. 10] is **DENIED**;

(2)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**; and

(3)     The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 26th day of March, 2010.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**